# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 22-1517V

| | |
|---|---|
| HELEN DRAPER,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: August 15, 2025 |

*David Charles Richards, Christensen & Jensen, P.C., Salt Lake City, UT,* for Petitioner.

*Dorian Hurley, U.S. Department of Justice, Washington, DC,* for Respondent.

### FINDINGS OF FACT AND ORDER TO SHOW CAUSE[1]

On October 14, 2022, Helen Draper filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received in her left shoulder on October 17, 2020. Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the reasons discussed below, I find the flu vaccine alleged as causal was more likely than not administered in Petitioner's left shoulder, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I.   Relevant Procedural History

Following Respondent's medical review of this case, the parties attempted to informally resolve the issue of damages but were ultimately unsuccessful. ECF Nos. 27-36. Respondent thereafter filed his Rule 4(c) Report in defense of this case on November 4, 2024, arguing (in relevant part) that Petitioner cannot establish she received the subject vaccination in her left arm, as her vaccination administration record (a computer-generated form), does not list the site of vaccination other than with an undated, handwritten annotation made by an unknown individual. ECF No. 37 at 14-15 (citing Ex. 2 at 2). Petitioner subsequently submitted supplemental vaccine administration records from her local pharmacy (reflecting a handwritten circle around left arm situs) and billing records in winter 2025. ECF Nos. 38-39. The issue of situs is ripe for resolution.

## II.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her

2

or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### III.   Finding of Fact

The following finding of fact is based on a complete review of the record, including the petition, all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following:[3]

- Petitioner received the subject vaccination on October 17, 2020, at her local pharmacy. Ex. 2 at 2-3. The original vaccination administration record provided in this case is computer-generated and lacks an entry bearing on situs. Ex. 2 at 2. However, it also contains a handwritten notation that reads "administered in left shoulder." *Id.*

- Following the filing of Respondent's Rule 4(c) Report (disputing vaccine situs), Petitioner submitted supplemental pharmacy records reflecting the site of administration of the subject vaccination. Ex. 26 at 3. This vaccination administration record is dated October 17, 2020, and appears as follows:

---

[3] While I have reviewed all submitted evidence in this case, only such evidence regarding vaccine situs will be discussed herein, though other facts may be provided as necessary.

- Three days post vaccination, on October 20, 2020, Petitioner returned to her chiropractor stating she had a flu shot and "has had bad left arm pain ever since[.]" Ex. 5 at 58. The chiropractor felt that Petitioner "present[ed] like frozen shoulder – likely injection was too high in shoulder or a flu shot side effect." *Id.*

- During Petitioner's follow-up chiropractor visits thereafter (through November 2020), Petitioner reported left arm symptoms that improved over time. Ex. 5 at 60-79. For instance, on October 23, 2020, she noted ongoing left shoulder symptoms but improvement in her pain and movement. *Id.* at 60. By November 23, 2020, Petitioner stated that her "left shoulder [wa]s doing a lot better, but [her pain was] not gone." *Id.* at 78. Although physical examinations were conducted during these chiropractic visits, Petitioner's left shoulder was not mentioned in the examination notes. *See id.* at 60-79.

- On January 22, 2021, Petitioner saw an orthopedic surgeon complaining of "[s]houlder pain since she had flu shot in Oct [sic] 2020." Ex. 6 at 40. The duration of time of the pain was noted as "Oct/2020" and the affected shoulder was listed as "the left." *Id.* On examination, Petitioner exhibited tenderness to palpation of the posterior shoulder, normal range of motion ("ROM"), but pain with abduction and internal rotation. *Id.* at 41. She underwent an x-ray of the left shoulder (revealing severe glenohumeral joint degenerative changes) and received a steroid injection in the left shoulder for pain control. *Id.* Her treater felt she had a "SIRVA in the setting of severe [glenohumeral osteoarthritis ("OA")]." *Id.*

- Petitioner returned to her orthopedic surgeon on June 23, 2021, for treatment of ongoing left shoulder pain. Ex. 6 at 28. She stated that she had been active in her yard over the last three weeks, and "has noted more pain in the left shoulder." *Id.* The physical examination of the left shoulder was unchanged. *Id.* The orthopedist's assessment was "SIRVA in the setting of severe [glenohumeral OA] that improved with cortisone injection in January[;]" the treater felt Petitioner's pain was "likely

4

related to her OA with some element of persistent tendonitis." *Id.* Petitioner received another steroid injection in the left shoulder. *Id.* at 28-29.

- Beginning on December 20, 2021, Petitioner sought care with an acupuncturist for "severe" left shoulder pain. Ex. 8 at 17. She reported a history of a "SIRVA – bad vaccination 1 yr [sic] ago[.]" *Id.* She sought treatment for her left shoulder with acupuncture through March 2022. *See id.* at 5-17.

- Petitioner thereafter had regular orthopedic follow up visits for left shoulder complaints (that she linked to the subject vaccination) throughout 2022 and into 2023. *See,* e.g., Ex. 3 at 32-40; Ex. 9 at 7-9; Ex. 10 at 245, 252-53, 415, 434, 463-65; Ex. 11 at 18-23, 58, 60-63; Ex. 17 at 23-24, 44-47; Ex. 19 at 148-51; Ex. 21 at 11-16, 47, 93-98, 109-11, 121-25; Ex. 23 at 37-38.

- In her affidavit, Petitioner attested that she received the subject vaccination on October 17, 2020, "extremely high on [her] left shoulder." Ex. 1 ¶ 7. On the same day of vaccination, she had "severe pain in [her] left arm at the vaccination injection site." *Id.* ¶ 8. She then described her treatment for left shoulder pain thereafter. *See id.* ¶¶ 9-21; *see also* Ex. 16 ¶¶ 7-8.

## ANALYSIS

The above evidence preponderantly supports the conclusion that Petitioner likely received the flu vaccine in her left shoulder, as alleged. Though not filed at the time of the filing of Respondent's Rule 4(c) Report (disputing situs), the supplemental vaccination record since provided by Petitioner weighs heavily in support of a favorable finding regarding the site of vaccine administration. Indeed, the record is a *handwritten* entry, encircling the notation for left arm situs for a flu vaccine administered on the date in question. Ex. 26 at 3.

As I have often noted, it is not unusual for the information regarding situs of vaccination set forth in administration records to be incorrect.[4] In many instances, the information regarding situs has been prerecorded and is not subsequently corrected,

---

[4] *See,* e.g., *Arnold v. Sec'y of Health & Hum. Servs.,* No. 20-1038V 2021 WL 2908519, at *4 (Fed. CL. Spec. Mstr. June 9, 2021); *Syed v. Sec'y of Health & Hum. Servs.,* No. 19-1364V, 2021 WL 2229829, at *4-5 (Fed. Cl. Spec. Mstr. Apr. 28, 2021); *Ruddy v. Sec'y of Health & Hum. Servs.*, No 19-1998V, 2021 WL 1291777, at *5 (Fed. Cl. Spec. Mstr. Mar. 5, 2021); *Desai v. Sec'y of Health & Hum. Servs.*, No 14-0811V, 2020 WL 4919777, at *14 (Fed. Cl. Spec. Mstr. July 30, 2020); *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020); *Stoliker v. Sec'y of Health & Hum. Servs.*, No. 17-0990V, 2018 WL 6718629, at *4 (Fed. Cl. Spec. Mstr. Nov. 9, 2018).

even if the vaccine was actually administered in the opposing arm.[5] Thus, although such records are unquestionably the first-generated documents bearing on the issue of site, and merit some weight as a result, they are not *per se* reliable simply because they come first. In fact, I have previously determined that the very nature of vaccination record creation provides some basis for *not* accepting them as the evidence worthy of highest probative weight. *See,* e.g., *Rizvi v. Sec'y of Health & Hum. Servs.*, No. 21-881V, 2022 WL 2284311, at *4 (Fed. Cl. Spec. Mstr. May 13, 2022). And I routinely give *greater weight* to vaccination records that are handwritten – meaning those that require specific action on the part of the vaccine administrator (an indicia of the effort to provide correct information). *See,* e.g., *Rizvi,* 2022 WL 2284311, at *5; *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020).

The supplemental vaccine administration form in this case is a handwritten entry that is consistent with Petitioner's assertion and thus supports a finding of left arm situs. Indeed, this entry is particularly persuasive when weighed against Petitioner's clear, consistent, and close-in-time reports of left shoulder pain following her receipt of a flu vaccine in that arm. The record of Petitioner's October 20, 2020 chiropractor visit noting she has had "bad left arm pain ever since" a flu shot (Ex. 5 at 58), is probative. This record is from only three days post vaccination and is the most contemporaneous record other than the vaccine administration record itself.

Petitioner's left shoulder administration arguments are further corroborated by her October 23, 2020 follow-up chiropractic visit (three days later) (Ex. 5 at 60), and visits thereafter, where she consistently reported that her left shoulder pain began with receipt of the subject flu vaccination in that arm. And as the above-referenced medical records further establish, when seeking medical treatment on every subsequent occasion, Petitioner consistently reported left shoulder pain attributable to her flu vaccination, and she received treatment for said shoulder, specifically. *See,* e.g., Ex. 3 at 104, 108, 149; Ex. 6 at 18, 28-29, 40; Ex. 8 at 5-17. I find by a preponderance of the evidence that Petitioner received her October 17, 2020 flu vaccine in her left arm. To rule otherwise, the overall record would need to contain more instances in which a different administration situs was suggested or supported.

---

[5] In a recent ruling by another special master, the pharmacist who had administered the relevant vaccination actually testified that she inputs "left deltoid" into the computer system as a matter of course, without confirming the actual site of vaccination, based upon the assumption that most vaccinees are right-handed. *Mezzacapo v. Sec'y of Health & Hum. Servs.*, No. 18-1977V, 2021 WL 1940435, at *4 (Fed. Cl. Spec. Mstr. Apr. 19, 2021).

### IV.     Order to Show Cause and Scheduling Order

While I have determined that Petitioner's vaccination was administered in her left shoulder, as alleged, this Ruling does not resolve the remaining issues related to Petitioner's ability to establish a Table SIRVA claim.

Respondent's remaining objections to the Table SIRVA claim have some merit, and thus will likely require more factual development of the record and/or explanation from Petitioner. For instance, in contesting both the first and fourth QAI requirements for a Table SIRVA, Respondent argues that Petitioner had a history of pain and dysfunction of her left shoulder prior to vaccination, and relatedly was diagnosed with a condition that would explain her post-vaccination symptoms. Respondent's Report at 15 (citing Section 100.3(c)(10)(i), (iv)).

Specifically, Petitioner has a history of chronic left shoulder pain (plus symptoms of subacromial impingement syndrome) and OA – which was confirmed by x-ray both in 2019 (pre-vaccination) and throughout 2021 and beyond (post vaccination). *See*, e.g., Ex. 3 at 5, 155-56; Ex. 4 at 2-6; Ex. 5 at 2-57. In fact, Petitioner's January 22, 2021 left shoulder x-ray – approximately three months post vaccination – showed severe OA and glenohumeral joint degenerative changes. Ex. 4 at 5-6; Ex. 6 at 40-41; Ex. 7 at 5.

More so, as Petitioner's left shoulder pain went on (i.e., after June 2021), Petitioner's treaters suspected her OA was responsible for (at least some of) her pain, rather than her SIRVA (as originally proposed in some circumstances). *See*, e.g., Ex. 6 at 28, 40 (the orthopedist's feeling that Petitioner had "SIRVA in the setting of severe [glenohumeral] OA"); Ex. 8 at 5-17 (the acupuncturist's note from February 2022 that Petitioner had both SIRVA and arthritis, and that the SIRVA may have "resolved"); Ex. 9 at 9 (noting a diagnosis of left shoulder glenohumeral OA, with surgery as a proposed treatment option); Ex. 10 at 252-53 (a record from Petitioner's May 2022 left shoulder arthroscopy showing pre- and post-operative diagnoses of degenerative/severe arthritis with rotator cuff pathology).

Such diagnostic findings of OA - present before, at the same time as the manifestation of Petitioner's alleged vaccine injury, and then after the fact - could thus very well explain Petitioner's post vaccination symptoms, precluding Petitioner from establishing a Table claim. Better substantiation of that claim is necessary.

### CONCLUSION

Despite a finding of left arm situs, as alleged, Petitioner's Table SIRVA claim cannot proceed unless Petitioner offers sufficient evidence demonstrating that her pre-existing condition and symptoms (also present after vaccination) could not explain her

post-vaccination shoulder symptoms. I will afford her the chance to file such evidence or to provide other argument that her injury was consistent with a SIRVA.

It is important that Petitioner take seriously the chance I am providing her to substantiate her claim. It is a petitioner's obligation to follow court orders and to provide the evidence to support her claim. Failure to follow court orders, as well as failure to file the medical records and other evidence to support her claim, may result in dismissal of Petitioner's claim. *Tsekouras v. Sec'y of Health & Hum. Servs.*, 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 810 (Fed. Cir. 1993) (per curiam); *Sapharas v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 503 (1996); Vaccine Rule 21(b).

Accordingly, **Petitioner is therefore hereby ORDERED to Show Cause why her Table claim should not be dismissed for insufficient evidence by no later than <u>Wednesday, October 15, 2025</u>**. If Petitioner determines that no additional evidence exists in support of her Table claim, she shall file a status report so confirming, with the knowledge that (at a minimum) her Table SIRVA claim will be dismissed, and her case may ultimately be transferred out of SPU thereafter.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master